# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### AT NASHVILLE

| | | |
|---|---|---|
| **BRENDA JOHNSON** | ) | |
| | ) | |
| v. | ) | **Case No. 3:24-cv-01304** |
| | ) | |
| **TRAVIS MACON LAMPLEY** *et al.* | ) | |

**TO: Honorable Waverly D. Crenshaw, Jr., United States District Judge**

## REPORT AND RECOMMENDATION

By Order entered February 19, 2025 (Docket Entry No. 55), the Court referred this *pro se* action to the Magistrate Judge for pretrial proceedings under 28 U.S.C. §§ 636(b)(1)(A) and (B), Rule 72(b) of the Federal Rules of Civil Procedure, and the Local Rules of Court.

For the reasons set forth below, the undersigned respectfully recommends that:

(1)     Plaintiff's "request for judgment under Rule 54(b) and notice of removal" (Docket Entry No. 70) be **DENIED,** the emergency motion to remand filed by Defendant Tennessee Department of Children's Services ("DCS") (Docket Entry No. 78) be **GRANTED,** and the state action sought to be removed by Plaintiff be **REMANDED** back to the Rutherford County Juvenile Court.

(2)     The Motion to Dismiss of Brandon McKnight Huddleston, Ashley Mellinger, Victor Eugene Morris (Docket Entry No. 14) be **GRANTED**, and the Motion to Dismiss of Travis Macon Lampley and S. Ray White (Docket Entry No. 47) be **GRANTED**.

(3)     The Court adhere to the principles of the domestic relations exception to federal court jurisdiction and abstention and accordingly **refrain from exercising further jurisdiction in this case**.

(4)     All other pending motions in this case be **DENIED** as moot.

# I. BACKGROUND SUMMARY

Brenda Faye Johnson ("Plaintiff") is a resident of Murfreesboro, Tennessee. On October 30, 2024, she initiated this *pro se* lawsuit with the filing of a 71 page complaint. *See* COMPLAINT (Docket Entry No. 1). Her lawsuit arises from events that began on March 4, 2023, when she was arrested by officers of the Murfreesboro City Police Department after they arrived at her home in response to a domestic dispute between Plaintiff and her sister. At the time, there was also a pending criminal charge against Plaintiff for educational neglect based on alleged truancy of her school aged children. When arrested, Plaintiff had three minor children – Isaiah Emmanuel Johnson, V.J., and C.G., aged 16, 14, and 20 months at the time – in her home and they were placed into the custody of the Tennessee Department of Children's Services ("DCS") when she was arrested. DCS then filed a petition in the Rutherford County Juvenile Court to declare the children dependent and neglected and for emergency temporary legal custody of the children. The Juvenile Court granted the petition and a protective custody order was entered that placed the children in the custody of the Juvenile Court and DCS.

Since that time, Plaintiff has been embroiled in legal proceedings related to both the criminal charges and the custody of her children. Although the oldest child, Isaiah Emmanuel Johnson, has turned 18, the two younger children remain in the custody of DCS. Plaintiff contends that the criminal charges have been resolved favorably to her but that she has been wrongfully denied the custody of her children. DCS filed a petition on August 26, 2024, in the Rutherford County Juvenile Court to terminate her parental rights and the parental rights of the fathers of V.J. and C.G. That petition remains pending at this time.

In the complaint, Plaintiff asserts federal question and supplemental jurisdiction and brings 13 claims for alleged federal constitutional violations, violations of state law, and other

wrongdoings based upon these events. (*Id*. at 62-66.) Named as defendants are sixteen state and county entities and employees that have been involved in some manner in these events: DCS; DCS Commissioner Margie Quin; DCS attorneys Stephen Marsh and Martha Gillespie-Stewart; DCS employee and Children Protective Services Case Manager Khelsea Smith; Rutherford County, Tennessee ("Rutherford County"); Rutherford County Judge Travis Macon Lampley; Rutherford County Magistrate Judge S. Ray White; Rutherford County Assistant District Attorney Jonathan Kyle Cameron; court appointed guardian ad-litems Betsy Leigh Crow and Cherie Lane Cash-Kristinus; Murfreesboro Police Department Officers Victor Eugene Morris, Brandon McKnight Huddleston, and Ashley Mellinger; and foster parents Melveshia Kenice Doston and Jesse Ewing Dotson, III.

Plaintiff seeks various forms of damages, declaratory relief, and injunctive relief, including an injunction prohibiting the Juvenile Court from interfering with her custodial rights and ordering the return of her children to her care and custody. (*Id*. at 66-71.) In a post-complaint filing, Plaintiff seeks further relief from this Court, consisting of requests for the direct intervention of this Court in the Juvenile Court proceedings. *See* MOTION FOR EXPEDITED REUNIFICATION/PLACEMENT; MOTION TO CHANGE OF VENUE TO SHELBY COUNTY JUVENILE COURT; AND MOTION TO ENJOIN RUTHERFORD COUNTY JUVENILE COURT AND ANY SUBSTITUTES FROM TAKING FURTHER ACTIONS IN CASE NO. TC-4915 & TC-5456 (Docket Entry No. 7).

All Defendants, other than the Dotsons and Betsy Leigh Crow, have appeared. Motions to dismiss that are currently pending and ripe for decision have been filed by the majority of the

Defendants.[1] Plaintiff likewise has filed a variety of motions that are pending and ripe for decision.[2] Finally, Plaintiff has recently filed an "emergency motion for temporary restraining order and preliminary injunction and declaratory relief,' in which she seeks an order from this Court that, among other things, halts certain actions by DCS, ceases all proceedings in the Juvenile Court, orders the return of the minor children to Plaintiff's custody, and schedules a hearing to examine the state court proceedings and orders. (Docket Entry No. 81).

---

[1] MOTION TO DISMISS FILED ON BEHALF OF BRANDON MCKNIGHT HUDDLESTON, ASHLEY MELLINGER, VICTOR EUGENE MORRIS (Docket Entry No. 14); DCS DEFENDANTS' MOTION TO DISMISS filed by Martha Monique Gillespie-Stewart, Stephen Justus Marsh, Khelsea Tyese Smith, and Margie Williams Quin (Docket Entry No. 42); COUNTY DEFENDANT'S MOTION TO DISMISS filed by Travis Macon Lampley, S. Ray White, and Rutherford County (Docket Entry No. 47); and DEFENDANT JONATHAN KYLE CAMERON'S MOTION TO DISMISS (Docket Entry No. 56).

[2] MOTION FOR EQUITABLE TOLLING, CONTINUED CLAIM DOCTRINE, AND FRAUDULENT CONCEALMENT (Docket Entry No. 2); MOTION FOR EXPEDITED REUNIFICATION/PLACEMENT; MOTION TO CHANGE OF VENUE TO SHELBY COUNTY JUVENILE COURT; AND MOTION TO ENJOIN RUTHERFORD COUNTY JUVENILE COURT AND ANY SUBSTITUTES FROM TAKING FURTHER ACTIONS IN CASE NO. TC-4915 & TC-5456 (Docket Entry No. 7); MOTION FOR RULING ON PAPER (WITHOUT A HEARING) (Docket Entry No. 8); MOTION TO APPOINT COUNSEL FOR MINOR CHILDREN V.J. AND C.G. INCLUDING AFFIDAVIT OF INDIGENCY (Docket Entry No. 23); MOTION REGARDING SERVICE OF PROCESS ON ASSISTANT DISTRICT ATTORNEY JONATHAN KYLE CAMERON (Docket Entry No. 29); MOTION FOR LEAVE TO AMEND COMPLAINT filed by Plaintiff and Isaiah Johnson to permit Isaiah Johnson to sign the original complaint as a plaintiff (Docket Entry No. 40); MOTION TO REBUT DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR EXPEDITED REUNIFICATION/PLACEMENT, CHANGE OF VENUE, AND INJUNCTION (Docket Entry No. 54); MOTION FOR LEAVE TO AMEND COMPLAINT to add two new individuals as defendants and add new claims that are based upon the continued Juvenile Court proceedings and DCS's activity related to the custody of her children (Docket Entry No. 69); and, REQUEST FOR JUDGEMENT UNDER RULE 54(B); NOTICE OF REMOVAL (Docket Entry No. 70).

4

## II.     REMOVAL AND REMAND MOTIONS[3]

On May 30, 2025, Plaintiff filed what is styled as "Request For Judgement [sic] Under Rule 54(b); Notice of Removal." (Docket Entry No. 70.) Plaintiff states that she comes "pursuant to 28 U.S.C. §§ 1331, 1441, 1443, and 1446, and respectfully files this Notice of Removal of the juvenile proceeding tc5456 from the Juvenile Court of Rutherford County, Tennessee to the United States District Court for the Middle District of Tennessee" and "pleads for relief under Rule 54(b)." (*Id*. at 1.) The grounds for her request for removal are (1) her assertion that her civil rights continue to be violated by the state Juvenile Court proceedings and (2) her contention that the judge who was specially appointed by the Tennessee Supreme Court to hear the Juvenile Court proceedings, Judge Michael Meise, is acting beyond his jurisdictional authority.[4]

Responses in opposition to removal have been filed by Defendants Travis Macon Lampley, S. Ray White, and Rutherford County (Docket Entry No. 76) and Defendants Martha Monique Gillespie-Stewart, Stephen Justus Marsh, Khelsea Tyese Smith, Margie Williams Quin, and DCS (Docket Entry No. 77). By these filings, Defendants primarily argue that the requested removal of the state Juvenile Court proceedings is improper because this Court lacks subject matter jurisdiction over those proceedings and the state court action is therefore not subject to removal.

---

[3] The Court addresses the issues of removal and remand via a report and recommendation because motions for remand, while not categorically dispositive under 28 U.S.C. § 636(b)(1)(A), are generally treated as dispositive motions for which a magistrate judge must issue a report and recommendation. *Vogel v. U.S. Office Prod. Co.*, 258 F.3d 509, 517 (6th Cir. 2001).

[4] Although not clearly stated in the filings, it appears to the Court that Judge Lampley recused himself, as well as all magistrate judges for the Rutherford County Juvenile Court, from the Juvenile Court proceeding on November 12, 2024, because he was named as a defendant in the instant case and that Judge Meise was thereafter appointed. (Docket Entry Nos. 43-4, 43-5, 70-1, and 73-1.)

5

Defendant DCS also filed an emergency motion to remand of the matter back to the state Juvenile Court pursuant to 28 U.S.C. § 1447(c) as expeditiously as possible given the significance of the termination proceeding at issue in state court and the delay in the state court proceedings caused by Plaintiff's removal petition. (Docket Entry No. 78.)

Plaintiff responded in opposition to the motion for remand, setting forth several pages of what she believes are irregularities and wrongdoings in the state court proceedings. She argues that removal is proper because the claims in the instant case and the irregularities and wrongdoings that she points to involve significant federal issues and questions and that removal would ensure that Plaintiff's constitutional rights are adjudicated fairly and without bias. (Docket Entry No. 80.)

Plaintiff's notice of removal and attempt to remove the state Juvenile Court proceedings to this Court is patently improper. Accordingly, her notice of removal is properly deemed ineffective and the motion for remand filed by Defendant DCS is properly granted, warranting remand of this matter back to the Rutherford County Juvenile Court.

The removal statutes, 28 U.S.C. §§ 1441 *et seq.*, are "to be construed strictly, narrowly and against removal." *Tech Hills II Assocs. v. Phoenix Home Life Mut. Ins., Co.*, 5 F.3d 963, 968 (6th Cir. 1993). The party seeking removal bears the burden of demonstrating the federal court has original jurisdiction over the action. *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 549 (6th Cir. 2006).

Plaintiff fails to meet this burden. Generally, a civil action may be removed from state court to federal court only if the action could have been filed originally in federal court. 28 U.S.C. § 1441. Plaintiff's removal notice is clearly not sufficient in this regard. The proper focus of the removal analysis is on the complaint or other filing document in the state court action that is sought

6

to be removed. *Home Depot U. S. A., Inc. v. Jackson*, 587 U.S. 435, 441 (2019). Removal is proper only if that action itself could have been brought in federal court. *Id.*

*First*, the action sought to be removed by Plaintiff is a state court action to terminate her parental rights and is one that is based upon and governed by state law. Tenn. Code Ann. §§ 36-1-113; 37-1-104(c); 37-1-147(a). It is not an action that could have been filed in the first instance in federal court. Indeed, more than 100 years ago, the United States Supreme Court stated: "The whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states and not to the laws of the United States." *In re Burns*, 136 U.S. 586, 593-94 (1890). There is no basis for Plaintiff's assertion that the state court action arises under federal law and is one over which this Court has original federal jurisdiction.

*Second*, although Plaintiff raises defenses or objections to the state court action that are based upon federal law, her assertion of such defenses or objections does not provide a basis that supports removal. *See Holmes Group, Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 831 (2002) ("[A] counter-claim – which appears as part of the defendant's answer, not as part of the plaintiff's complaint – cannot serve as the basis for 'arising under' jurisdiction."); *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808 (1986) ("A defense that raises a federal question is inadequate to confer federal jurisdiction."); *Chase Manhattan Mortg. Corp. v. Smith*, 507 F.3d 910, 914-15 (6th Cir. 2007) (federal counterclaims and defenses are inadequate to confer federal jurisdiction and fail to establish an objectively reasonable basis for removal).

*Third*, a case cannot be removed from state court to become part of an already existing federal case. *See Paralee Boyd Salon, LLC v. COG Studio, LLC*, No. 16-13375, 2016 WL 5388911, at *1 (E.D. Mich. Sept. 27, 2016) ("The Notice of Removal was improperly filed. This is because

7

a case cannot be removed from state court to become part of an already existing federal case."). Plaintiff cannot merely merge the action that is currently pending in the Juvenile Court into the instant federal case. The fact that her pending federal civil rights lawsuit is related to or is based upon the proceedings in the state court action simply fails to provide a basis supporting removal of the state court proceeding.

*Finally*, the substantive issues of parental rights are inherently matters of state law, and the Sixth Circuit has consistently held that "[e]ven when brought under the guise of a federal question action, a suit whose substance is domestic relations generally will not be entertained in a federal court." *Firestone v. Cleveland Tr. Co.*, 654 F.2d 1212, 1215 (6th Cir. 1981) (citing *Denman v. Leedy*, 479 F.2d 1097, 1098 (6th Cir. 1973)). *See Fisher v. Miliken*, No. 1:21-cv-140-BJB, 2022 WL 1094720, at *4 (W.D. Ky. Apr. 12, 2022) ("This Court lacks jurisdiction to consider Plaintiff's request to have her child returned to her custody due to the domestic-relations exception to federal jurisdiction."). Therefore, any attempt by Plaintiff to use this federal forum to decide domestic relations or family law matters regarding child custody and her parental rights is a futile effort.

Plaintiff's reliance upon removal premised upon 28 U.S.C. § 1443(1) fares no better. Removal under this provision is limited and exceedingly narrow. *City of Greenwood, Miss. v. Peacock*, 384 U.S. 808, 828 (1966) ("Under § 1443(1), the vindication of the defendant's federal rights is left to the state courts except in the rare situations where it can be clearly predicted by reason of the operation of a pervasive and explicit state or federal law that those rights will inevitably be denied by the very act of bringing the defendant to trial in the state court."). Plaintiff's assertion that her civil rights are being violated by the proceedings in the Juvenile Court simply fails to warrant removal under Section 1443(1). *See Tennessee Dep't of Child.'s Servs. v.*

*Winesburgh*, 614 F. App'x 277, 278 (6th Cir. 2015) (state juvenile court petition to terminate parental rights could not be removed to federal court pursuant to Section 1443(1)); *Schriber v. Kentucky Dep't of Child Protective Servs.*, No. 4:21-CV-5-JHM, 2021 WL 1877808 (W.D. Ky. May 10, 2021) (same).

Because the Court finds that Plaintiff fails to show that removal is substantively proper, it is not necessary to address Defendants' arguments that Plaintiff's notice of removal is also procedurally deficient. The Court also notes that the intent behind Plaintiff's reference to Rule 54(b) in her notice of removal is unclear. Rule 54(b) sets out the parameters for entry of a final judgment in a case that involves multiple claims or parties. It has no relevance to the issue of removal.

For all the reasons discussed above, remand of the state action sought to be removed by Plaintiff is required, as requested by DCS.

### III.    MOTIONS TO DISMISS

Motion to dismiss are reviewed under the standard that the Court must accept as true all of the well-pleaded allegations contained in the complaint and construe the complaint in the light most favorable to Plaintiff. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 11-12 (6th Cir. 1987). Because Plaintiff is litigating the case *pro se*, the Court is also required to view her complaint with some measure of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). *See also Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991). Although the complaint need not contain detailed factual allegations, the factual allegations supplied must be enough to show a plausible right to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-61 (2007). *See also Ashcroft v.*

9

*Iqbal*, 556 U.S. 662, 678 (2009). To state a plausible claim for relief, the alleged facts must provide "more than a sheer possibility that a defendant has acted unlawfully." *Mik v. Federal Home Loan Mortg. Corp.*, 743 F.3d 149, 157 (6th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. In deciding a motion to dismiss, the Court is not required to accept summary allegations, legal conclusions, or unwarranted factual inferences. *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999); *Lillard v. Shelby Cty. Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996).

Plaintiff's lawsuit concerns matters that are certainly significant and serious. Nonetheless, her complaint presents an intertwined morass of claims, defendants, and allegations, the crux of which is an attempt to collaterally attack the current and ongoing state court proceedings in the Rutherford County Juvenile Court that pertain to Plaintiff's parental rights and the custody of her minor children. Such an attack is simply not within the purview of this Court. As such, the bulk of Plaintiff's lawsuit must be dismissed on jurisdictional and abstention grounds. To the extent that claims brought against some of the moving Defendants may not be subject to dismissal on jurisdictional and abstention grounds, these claims are still subject to dismissal based on timeliness and immunity defenses as set out *infra*. The Court has reviewed Plaintiff's responses in opposition to the motions to dismiss and finds that she does not raise a persuasive rebuttal to the arguments for dismissal.

## A.      **Domestic Relations Exception**

At the outset, a significant jurisdictional bar exists to Plaintiff's lawsuit. Federal courts are courts of limited jurisdiction, *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986), and the domestic relations exception precludes federal courts from hearing matters relating to child

10

custody decrees and orders. *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992). These matters are more appropriately left to the jurisdiction and expertise of the state courts. *Id*. It has been well-established for more than 100 years that, "[t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states, and not to the laws of the United States." *Burrus*, 136 U.S. at 593-94. *See also Castorr v. Brundage*, 674 F.2d 531, 537 (6th Cir. 1982) (in cases involving domestic relations, "federal courts historically have deferred to the expertise of State courts, and have avoided accepting jurisdiction under the principles of comity."); *Hughes v. Hamann*, 23 F. App'x. 337, 338 (6th Cir. 2001).

Although the domestic relations exception applies only to a narrow range of cases, *Ankenbrandt*, 504 U.S. at 701, it precludes a federal court from adjudicating claims when a plaintiff "positively sues in federal court for divorce, alimony, or child custody or seeks to modify or interpret an existing divorce, alimony, or child custody decree." *Chevalier v. Est. of Barnhart*, 803 F.3d 789, 797 (6th Cir. 2015) (internal citation omitted). "Even when brought under the guise of a federal question action, a suit whose subject is domestic relations generally will not be entertained in a federal court." *Firestone*, 654 F.2d at 1215 (citing *Denman*, 479 F.2d at 1098); *Chambers v. Michigan*, 473 F. App'x 477, 479 (6th Cir. 2012); *Partridge v. State of Ohio*, 79 F. App'x 844, 845 (6th Cir. 2003); *Danforth v. Celebrezze*, 76 F. App'x 615, 616-17 (6th Cir. 2003).

To be sure, Plaintiff sets out in her complaint a variety of tort claims and seeks monetary damages as one of her remedies. However, her claims are largely premised upon what she contends are flawed state court proceedings in the Juvenile Court, proceedings which she essentially attacks through this action. A fair reading of Plaintiff's lawsuit shows that it is permeated by her quest to reverse the removal of her children from her custody and to gain an order from this Court directing

11

that the children be returned to her custody. Plaintiff specifically seeks injunctive remedies from this Court to modify or overturn state court orders related to the custody of her children, to prohibit the state court judge "from continuing to interfere with [her] lawful custodial rights," to require the return of her children to her custody, and to effectively take over all aspects of the child custody proceedings that are pending in the Rutherford County Juvenile Court. (Docket Entry No. 1 at 67-68.) Further, in both a filing made shortly after initiating the lawsuit and in a very recent filing, Plaintiff reiterates her desire for the direct intervention of this Court in the Juvenile Court proceedings. *See* MOTION FOR EXPEDITED REUNIFICATION/PLACEMENT; MOTION TO CHANGE OF VENUE TO SHELBY COUNTY JUVENILE COURT; AND MOTION TO ENJOIN RUTHERFORD COUNTY JUVENILE COURT AND ANY SUBSTITUTES FROM TAKING FURTHER ACTIONS IN CASE NO. TC-4915 & TC-5456 (Docket Entry No. 7) and EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AND DECLARATORY RELIEF TO HALT ILLEGAL SPG PLACEMENT AND OUT-OF-STATE TRANSFER OF MINOR CHILDREN (Docket Entry No. 81).

"When analyzing the applicability of the domestic-relations exception, [the Court] must focus on the remedy that the plaintiff seeks." *Chevalier*, 803 F.3d at 797. Plaintiff is unquestionably suing in federal court for relief that seeks an award of child custody, seeks to overturn or modify decisions that have been made in the Juvenile Court, and seeks to involve and entangle this Court in domestic relations decisions regarding child custody and parental rights that are for the state courts to decide. Plaintiff case, although cloaked in the language of constitutional torts, is the type of case to which the domestic relations exception applies. *See Greenberg v. Slatery*, No. 22-5886, 2023 WL 2771640, at *2 (6th Cir. Mar. 28, 2023) (affirming application of domestic relations exception to case when "[t]he core of all six of [plaintiff's] claims, although

12

cloaked in the language of constitutional torts, attacks the validity of the state court's judgment in the divorce and child-custody proceedings and seeks its nullification as the primary form of relief"); *Stephens v. Hayes*, 374 F. App'x 620, 623 (6th Cir. 2010) ("[W]e decline to exercise jurisdiction over Plaintiffs' claims in which the tort action is a mere pretense and the suit is actually concerned with child custody issues."); *Fisher*, 2022 WL 1094720, at *4 ("This Court lacks jurisdiction to consider Plaintiff's request to have her child returned to her custody due to the domestic-relations exception to federal jurisdiction.").

Lawsuits of the kind brought by Plaintiff here have repeatedly been dismissed on the basis of the domestic relations exception. *See Mensah v. St. Joseph Cty. Family Indep. Agency*, 187 F.3d 636 (6th Cir. 1999) (federal court correctly declined to exercise jurisdiction over the plaintiff's civil rights claims for monetary and injunctive relief because they involved domestic relations concerning the custody of his children); *LeBlanc v. Hagan*, No. 1:16-CV-00178-GNS, 2017 WL 2779490 (W.D. Ky. June 27, 2017) (the domestic relations exception barred the plaintiff's claims for damages and injunctive relief based on allegations that her constitutional rights were violated by an investigation into dependency, abuse, and neglect allegations that led to the removal of her children); *Stone v. Child Prot. Servs.*, No. 4:16CV-69-JHM, 2016 WL 4821371 (W.D. Ky. Sept. 9, 2016) (the plaintiff's claims for monetary, injunctive, and declaratory relief based on alleged violations of his constitutional rights were dismissed under domestic relations exception because he was actually challenging the state family court's child custody proceeding."); *Johnson v. Collins*, No. 15–31–ART, 2015 WL 4546794, at *3-5 (E.D. Ky. July 28, 2015) (the domestic relations exception required the dismissal of the plaintiff's case in which she alleged that her

children had been improperly and illegally removed from her custody and in which she sought injunctive relief and punitive damages).

## B. __Abstention__

It further is apparent that the state court proceedings involving Plaintiff are still on-going. To this extent, the doctrine of abstention pursuant to *Younger v. Harris*, 401 U.S. 37 (1981), "requires a federal court to abstain from granting injunctive or declaratory relief that would interfere with pending state judicial proceedings." *O'Neill v. Coughlan*, 511 F.3d 638, 643 (6th Cir. 2008). The Sixth Circuit has enunciated three factors used to determine whether to abstain from hearing a case pursuant to *Younger*: "(1) there must be on-going state judicial proceedings; (2) those proceedings must implicate important state interests; and (3) there must be an adequate opportunity in the state proceedings to raise constitutional challenges." *O'Neill*, 511 F.3d at 643.

The Sixth Circuit has recognized that the realm of domestic relations is an important state interest. *Kelm v. Hyatt*, 44 F.3d 415, 420 (6th Cir. 1995) ("These traditional domestic relations issues qualify as important state issues under the second element of *Younger*."). Plaintiff has an adequate opportunity in the state trial and appellate courts to raise any constitutional challenges she has regarding the child custody issues. Her mere dissatisfaction with the results of the state court proceedings does not render the proceedings inadequate. As this Court recently stated in dismissing a case in which the plaintiffs alleged a wide ranging conspiracy against them by DCS, state officials, and judges related to actions taken to terminate the plaintiffs' parental rights:

> In sum, this Court cannot properly exercise jurisdiction over this Complaint seeking federal intervention into state domestic-relations matters. Because state custody proceedings are currently ongoing, principles of federalism and comity require that the Court abstain from intruding upon them through the exercise of its injunctive powers. Plaintiffs' attempt to effectively remove custody proceedings to federal court by alleging illegal and corrupt case-administration and adjudication amounts

14

to an invitation to this Court to "put [its] brethren of the state judiciary on trial." *City of Greenwood, Miss. v. Peacock*, 384 U.S. 808, 828 (1966). The Court must decline to do so, even though Plaintiffs allege that leaving the custody determination before the state courts will result in violations of their federal rights. It is for the state courts to address such alleged violations, in the context of resolving the dispute over custody of T.S.R, T.D.R, and T.C.R. that is properly before them.

*Robards v. Slatery*, No. 2:24-cv-00052, 2024 WL 4370780, at *4 (M.D. Tenn. Oct. 1, 2024). *See also Kolstedt v. Tennessee Dep't of Child.'s Servs.*, No. 2:25-cv-00033, 2025 WL 1643599, at *4 (M.D. Tenn. June 9, 2025) (applying *Younger* abstention to the plaintiff's requests for injunctive relief that would intervene in ongoing state juvenile court proceedings).

**C.**  **Motion to Dismiss of DCS, Martha Monique Gillespie-Stewart, Stephen Justus Marsh, Khelsea Tyese Smith, and Margie Williams Quin (Docket Entry No. 42) and the Motion to Dismiss of Jonathan Kyle Cameron (Docket Entry No. 56)**

The DCS Defendants and Defendant Cameron raise several arguments for dismissal of the claims brought against them. However, the claims brought against the DCS Defendants and Defendant Cameron are so inextricably intertwined with the ongoing state Juvenile Court proceedings that the Court finds it inappropriate to exercise jurisdiction over these claims because of the domestic relations exception and principles of abstention as set out *supra*. There is therefore no reason to address the full panoply of the arguments for dismissal of the claims raised by these Defendants.

**D.**  **Motion to Dismiss of Brandon McKnight Huddleston, Ashley Mellinger, Victor Eugene Morris (Docket Entry No. 14)**

Because Plaintiff's claims against these three Defendant police officers are not indistinquishably linked to the current Juvenile Court proceedings, the Court finds that these claims are not subject to either the domestic relations exception or abstention principles. Nonethless, they must be dismissed as untimely.

15

By any fair reading of Plaintiff's complaint, the claims she brings against these three Defendants are based upon discrete and concluded events that occurred on March 4, 2023, when she was arrested and her children were removed and placed into the custody of DCS. The statute of limitations to be applied to constitutional claims brought under 42 U.S.C. § 1983 is the state statute of limitations applicable to personal injury actions under the law of the state in which the alleged § 1983 claim arises. *Haley v. Clarksville-Montgomery Cty. School Syst.*, 353 F.Supp.3d 724, 730 (M.D. Tenn. 2018). It is well settled that the one-year statute of limitations set out in Tenn. Code Ann. § 28-3-104(a)(3) applies to claims brought under § 1983 that arise in Tennessee. *See Hughes v. Vanderbilt Univ.,* 215 F.3d 543, 547 (6th Cir. 2000); *Merriweather v. City of Memphis*, 107 F.3d 396, 398 (6th Cir. 1997); *Berndt v. Tennessee*, 796 F.2d 879, 883 (6th Cir. 1986). However, Plaintiff did not file her lawsuit until October 23, 2024, more than one year after these events.

Similarly, Plaintiff's claims under Tennessee law for infliction of emotional distress, *see* Docket Entry No. 1 at 65-66, are governed by the one-year statute of limitations for personal torts set out in Tenn. Code Ann. § 28-3-104(a). *See Harvey v. Martin*, 714 F.2d 650, 652 (6th Cir. 1983); *Campbell v. AdhereHealth, LLC*, No. 3:19-CV-00730, 2020 WL 5702471, at *5 (M.D. Tenn. Sept. 23, 2020). Plaintiff's action for intentional infliction of emotional distress must therefore have been brought within one year of when the claims accrued. *See Roberson v. Tennessee*, 399 F.3d 792, 794 (6th Cir. 2005); *Merriweather*, 107 F.3d at 398.

Plaintiff's claims accrued and the statute of limitations period began to run when she knew or had reason to know of the injuries which are the basis of her action. *See Am. Premier Underwriters, Inc. v. Nat'l R.R. Passenger Corp.*, 839 F.3d 458, 461 (6th Cir. 2016); *Roberson*, 399 F.3d at 794; *Ruff v. Runyon*, 258 F.3d 498, 500 (6th Cir. 2001); *Collyer v. Darling*, 98 F.3d

16

211, 220 (6th Cir. 1996); *Wyatt v. A–Best, Co.*, 910 S.W.2d 851, 854 (Tenn. 1995). Plaintiff's complaint shows that she was clearly aware at the time of her arrest of Defendants' challenged conduct and the injuries that she contends she suffered because of their conduct. However, her claims were brought beyond the applicable statutes of limitations and are therefore untimely.

Plaintiff argues that equitable tolling, "continued claim doctrine," and fraudulent concealment render her claims timely. (Docket Entry No. 2.) Tolling principles for federal civil rights claims brought under § 1983 and for claims brought under state law are governed by state law. *See Bowden v. City of Franklin, Kentucky*, 13 F. App'x 266, 272 (6th Cir. 2001); *Jones v. Williamson Cnty. Bd. of Educ.*, No. 3:12-CV-0075, 2015 WL 751993, at *7 (M.D. Tenn. Feb. 23, 2015) (Sharpe, J.) ("Issues of tolling are likewise generally governed by state law."). The Court finds Plaintiff's tolling argument to be meritless.

The Tennessee Supreme Court has "consistently declined to recognize the doctrine of equitable tolling in civil proceedings." *Whitehead v. State*, 402 S.W.3d 615, 626 (2013). *See also Clark v. Clawson*, No. 3:20-cv-00230, 2021 WL 568017, at *3 (M.D. Tenn. Feb. 16, 2021) (adopting report and recommendation recommending that claims were barred by the applicable one-year statute of limitations for § 1983 claims). Instead, under Tennessee law, courts may only toll statutes of limitations in civil cases based on "the doctrines of equitable estoppel and fraudulent concealment . . ." *Redwing v. Cath. Bishop for Diocese of Memphis*, 363 S.W.3d 436, 460 (Tenn. 2012). "[T]he doctrine of equitable estoppel applies when the defendant has misled the plaintiff into failing to file suit within the statutory limitations period." *Id.* "Under the fraudulent concealment doctrine, the statute of limitations is tolled when 'the defendant has taken steps to prevent the plaintiff from discovering he [or she] was injured.'" *Id.* at 462 (alteration in original)

17

(quoting *Fahrner v. SW Mfg., Inc.*, 48 S.W.3d 141, 146 (Tenn. 2001)). Plaintiff fails to show that either of these doctrines applies to the claims brought against these three Defendants.

Similarly, there is no basis to find that a continuing violation exists. "[A] continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation." *Eidson v. State of Tenn. Dep't of Child.'s Servs.*, 510 F.3d 631, 635 (6th Cir. 2007) (quoting *Tolbert v. State of Ohio Dep't of Transp.*, 172 F.3d 934, 940 (6th Cir. 1999)); *McCune v. The City of Grand Rapids,* 842 F.2d 903, 905 (6th Cir. 1988). Plaintiff's claims against these three Defendants are based upon discrete acts that occurred on March 4, 2023, and are not based upon ongoing actions by them that would constitute a continuing violation.

**E.**  **Motion to Dismiss of Travis Macon Lampley, S. Ray White, and Rutherford County (Docket Entry No. 47)**

Because the two state court judges that Plaintiff has sued no longer appear to be actively hearing any matters in the Juvenile Court case or any matters involving Plaintiff, the Court does not view the claims brought against them as inextricably linked to the current Juvenile Court proceedings. These claims are not therefore subject to either the domestic relations exception or abstention principles. However, all claims against Defendants Lampley and White must be dismissed because they are entitled to absolute judicial immunity.

Judicial officers are absolutely immune from civil suits brought against them that are based upon their judicial actions. *Mireles v. Waco*, 502 U.S. 9, 9-10 (1991); *Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978); *Leech v. DeWeese*, 689 F.3d 538, 542 (6th Cir. 2012). Absolute judicial immunity is an immunity from suit, not merely the assessment of damages, and is not overcome by allegations of bad faith or malice on the part of the defendant. *Forrester v. White*, 484 U.S. 219, 227 (1988); *Mireles*, 502 U.S. at 11; *Leech*, 689 F.3d at 542. Absolute judicial immunity is

18

overcome only if (1) the actions at issue were not taken in the judge's judicial capacity and are, thus, not judicial in nature, or (2) the actions at issue were taken in the complete absence of all jurisdiction. *Mireles*, 502 U.S. at 11-12.[5]

Plaintiff's allegations against Defendants Lampley and White are based entirely upon conduct taken by them as judicial officers hearing court proceedings involving Plaintiff. Plaintiff has not raised any persuasive arguments against the application of judicial immunity or ones that are supported by sound legal authority. Plaintiff's dissatisfaction with the manner in which the proceedings were conducted and her attempts to discount the validity of those proceedings simply do not negate the shield of judicial immunity that requires dismissal of Defendants Lampley and White from this case. *See Castorr*, 674 F.2d at 537 (state juvenile court judge is entitled to absolute immunity from monetary claims brought against him under Section 1983 for actions taken in child custody proceedings).

With respect to Defendant Rutherford County, the Court finds the claims against this Defendants, while somewhat undefined and conclusory, are so inextricably intertwined with the ongoing state Juvenile Court proceedings that the domestic relations exception and principles of abstention as set out *supra* preclude the exercise jurisdiction over the claims.

---

[5] Tennessee provides for judicial immunity under state law that mirrors the immunity provided under federal law. *See Harris v. Witt*, 552 S.W.2d 85 (Tenn. 1977); *Heath v. Cornelius*, 511 S.W.2d 683 (Tenn. 1974).

19

## IV.    RECOMMENDATION

Based on the foregoing, it is respectfully **RECOMMENDED** that:

(1)    Plaintiff's "request for judgment under Rule 54(b) and notice of removal" (Docket Entry No. 70) be **DENIED,** the emergency motion to remand filed by Defendant Tennessee Department of Children's Services ("DCS") (Docket Entry No. 78) be **GRANTED,** and the state action sought to be removed by Plaintiff be **REMANDED** back to the Rutherford County Juvenile Court.

(2)    The Motion to Dismiss of Brandon McKnight Huddleston, Ashley Mellinger, Victor Eugene Morris (Docket Entry No. 14) be **GRANTED**, and the Motion to Dismiss of Travis Macon Lampley and S. Ray White (Docket Entry No. 47) be **GRANTED**.

(3)    The Court adhere to the principles of the domestic relations exception and abstention and accordingly **refrain from exercising further jurisdiction in this case,** including ruling on the merits of the motions to dismiss of the DCS Defendants (Docket Entry No. 42), Defendant Jonathan Cameron (Docket Entry No. 56), and Rutherford County (Docket Entry No. 47); and

(4)    All other pending motions in this case be **DENIED** as moot given the Court's decision to refrain from further jurisdiction due to the domestic relations exception and abstention.

**ANY OBJECTIONS** to this Report and Recommendation must be filed **within fourteen (14) days** of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. *See* Rule 72(b)(2) of the Federal Rules of Civil Procedure and Local Rule 72.02(a). Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140

20

(1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Any response to the objections must be filed **within fourteen (14) days** after service of objections. *See* Federal Rule 72(b)(2) and Local Rule 72.02(b).

Respectfully submitted,

_____
BARBARA D. HOLMES
United States Magistrate Judge